NOT DESIGNATED FOR PUBLICATION

No. 113,498

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WYATT C. PARNELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed March 4, 2016.
Affirmed.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*: Wyatt C. Parnell appeals his conviction and sentence for kidnapping
in violation of K.S.A. 2011 Supp. 21-5408(a)(3). Parnell contends the district court erred
by denying his motion to withdraw his guilty plea and by considering his criminal history
at sentencing. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The State of Kansas charged Parnell with aggravated kidnapping, rape and two
counts each of aggravated battery and aggravated intimidation of a witness. Prior to trial,

1

the State offered to amend the aggravated kidnapping charge to kidnapping and to dismiss the remaining charges in exchange for Parnell's guilty plea. Parnell rejected the plea offer, however, and the case proceeded to trial.

During the jury trial, the State presented testimony from a police officer, who said the victim had identified Parnell as her assailant, and from a treating physician who described the victim's extensive injuries. Parnell apparently doubted the victim herself would appear for trial. At the end of the second day, however, the trial court ordered the State to produce the victim in the courtroom. The State produced the complaining victim, and the trial court ordered her to appear the next day to testify.

Parnell's trial counsel, Quentin Pittman, visited Parnell in the jail that evening to see if his client wished to proceed with trial knowing the victim would testify. Parnell now expressed an interest in the State's plea offer, and Pittman called the prosecutor to inquire if the offer was still available. It was, and on the third day of trial Parnell entered a guilty plea to kidnapping.

As part of the plea deal, Parnell executed an acknowledgment of rights. Parnell represented in this document that his "decision to accept the plea agreement and change my plea is completely voluntary without anyone having threatened me or promised me anything of benefit, and is without duress or coercion other than that which the plea agreement provides." The trial court then personally advised Parnell of his rights, and Parnell again acknowledged that his plea was not prompted by any promises or threats. Additionally, Parnell indicated that he was satisfied with Pittman's representation. The trial court concluded the guilty plea was "freely, knowingly, intelligently, and voluntarily made."

Three weeks later, prior to sentencing, Parnell filed a pro se motion to withdraw his plea. Parnell alleged in conclusory fashion that Pittman was not prepared for trial and

2

had coerced him into pleading guilty. The trial court assigned new counsel and set the matter for a hearing.

About 6 months later, Parnell appeared with his new counsel for a hearing on his motion to withdraw plea. Parnell called Pittman to testify at the hearing. Pittman testified that based on "the recitation of the facts . . . [Parnell] had given me," he was "extremely concerned [Parnell] was going to be found guilty of both the rape and the agg[ravated] kidnapping, which is why I wanted him to at least consider the plea."

Parnell testified in support of his motion. He stated that at the time he pled, "I was happy with Mr. Pittman and what he had done." Parnell said it was later, after he had spoken "to people in my pod, and did homework for myself, and went to the law library," that he realized "the things [Pittman] was doing in my case wasn't really helping me."

Parnell specifically alleged Pittman had failed to subpoena two witnesses who could provide an alibi defense. He also claimed that Pittman had intimidated him with statements such as, "'[t]hey have a hard-on to get you.'" According to Parnell, Pittman also said "he heard the judge say with his own lips . . . that if I took the plea, he would take 34 months off my sentence."

The State did not call Pittman to rebut Parnell's allegations, and the State presented no other evidence. At the request of the State, the district court took judicial notice of the transcript from the guilty plea hearing.

During its ruling on the motion, the trial court recited many of Parnell's responses memorialized in the transcript from the guilty plea hearing. The trial court noted that given Parnell's criminal history, "[h]e was not a babe in the woods in this case during the trial preparation, during the trial proceedings, nor during the time of entering the plea."

3

The trial court concluded that while Parnell "obviously hoped for some things and those hopes didn't come to fruition," his plea was still "fairly and understandably made."

A presentence investigation (PSI) report showed Parnell had a criminal history score of A. At sentencing, the trial court asked for objections to the PSI. Parnell's counsel stated, "Your Honor, I've gone over the [PSI] with Mr. Parnell, and we would admit that he is a criminal history A." The trial judge personally asked Parnell if he had "any objection to any of the findings set forth in your PSI?" Parnell answered, "No, sir." The trial court therefore sentenced Parnell within the range provided for an A criminal history.

Parnell filed a timely appeal.

DENIAL OF MOTION TO WITHDRAW PLEA

Parnell contends the trial court erred by denying his motion to withdraw plea. We review these matters for abuse of discretion, which is shown where judicial action "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014). On appeal, Parnell bears the burden to prove the trial court abused its discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

We begin our analysis with the relevant statute: "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2015 Supp. 22-3210(d)(1).

4

Kansas caselaw has clarified the statutory provisions:

"In determining whether a defendant has shown good cause to withdraw a plea, a district court should consider three factors, sometimes called the *Edgar* factors, after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. [Citation omitted.] These factors should not, however, be applied mechanically and to the exclusion of other factors. [Citation omitted.]" *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

Parnell admits the district court "applied a correct legal standard." Instead, he argues the trial court should not have "adopted Mr. Pittman's testimony when reaching its factual and legal conclusions." Parnell contends his own "testimony was more credible" because he "was confident in his testimony," whereas Pittman "sometimes had difficulty remembering the circumstances." The State responds that since Parnell "presents no argument beyond asking this court to second-guess the [trial] court's credibility determination, he has waived any such challenges."

The State's argument has merit. An appellate court does not reweigh evidence or pass on witness credibility, so those arguments cannot establish error on appeal. See *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014). We will illustrate our conclusion by discussing Parnell's specific points.

Parnell renews his contention that Pittman did not subpoena alibi witnesses. Parnell does not recognize that such witnesses were statutorily barred from testifying given the lack of notice of an alibi defense. See K.S.A. 22-3218(4). Our question therefore is a more general one, whether Pittman was incompetent for not proceeding with an alibi defense.

5

Pittman was never directly asked at the plea withdrawal hearing about an alibi defense. But Pittman did testify that the State could place Parnell at the scene through text messages Parnell had sent. Pittman testified the defense strategy was to make "some sort of admission towards aggravated battery" while attempting "to beat the two level 1's," *i.e.*, aggravated kidnapping and rape. Pittman could not recall Parnell asking him to contact witnesses other than his mother, his brother, and perhaps the victim herself. Pittman also testified in general terms that he had conducted an adequate investigation before trial.

Parnell testified that he had asked Pittman to contact two alibi witnesses, but he identified one witness by her first name only. Parnell provided a full name for the other alleged alibi witness, but she was the mother of his child. Importantly, neither witness appeared at the plea withdrawal hearing to confirm Parnell's claimed alibi.

The district court rejected Parnell's argument that Pittman did not provide competent representation. The district court observed that it did not know what either alibi witness would have said. The district court noted, however, that Pittman was "experienced in these types of cases" and "is experienced in assessing how certain types of evidence will play or not play with the jury." The district court concluded that Parnell "was represented by competent counsel. And not only in general terms, but specifically as evidenced by his actions in this case, Mr. Pittman's representation was competent."

The district court's findings were supported by the evidence presented at the hearing. Although Pittman was never directly asked about an alibi defense at the plea withdrawal hearing, his testimony was essentially contrary to Parnell's claims. The trial court obviously credited Pittman's version of the events, and "[a]n appellate court does not weigh evidence to find facts." *State v. Ransom*, 289 Kan. 373, Syl. ¶ 1, 212 P.3d 203 (2009).

6

Next, Parnell renews his assertion that Pittman told him the judge would reduce the sentence by 34 months if he pled guilty. Parnell suggests that because Pittman was not asked about the district judge's alleged statement, there was no contrary evidence. But the same district judge that conducted the trial received the guilty plea and then ruled on the motion to withdraw Parnell's plea. The district judge would have known whether he made the statement. With respect to Pittman's alleged representation to Parnell about the statement, the district court introduced into evidence the transcript of the plea hearing where Parnell denied being offered any benefit for pleading guilty. The record therefore contains evidence contrary to Parnell's testimony, which he is again asking us to reweigh. Parnell's request is beyond our standard of review.

As Parnell acknowledges on appeal, he received a substantial benefit in exchange for his guilty plea. Still, Parnell testified at the plea withdrawal hearing that his guilty plea, which resulted in about 20 years' imprisonment, and a conviction at trial, which could have resulted in a practical life sentence, "shouldn't have been my only two options." But Parnell does not show that he had another viable option, and the record supports the district court's conclusion that Parnell knowingly and voluntarily chose the better of the two options before him.

In summary, Parnell does not meet his burden to show the district court abused its discretion when denying his motion to withdraw plea.

SENTENCING

Parnell contends the trial court erred at sentencing by considering his criminal history score. Parnell claims the error violated the Sixth and Fourteenth Amendments to the United States Constitution. We exercise unlimited review over the interpretation of sentencing statutes and over constitutional questions generally. See *State v. Phillips*, 299

7

Kan. 479, 494, 325 P.3d 1095 (2014); *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

Parnell contends that in *Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), "the United States Supreme Court held that any fact—with possible exception of a prior conviction—which increases the maximum penalty a defendant can receive for a crime must be included in the charging document, put before a jury and proven beyond a reasonable doubt." This holding is not found on the page cited, although on the next page of the opinion the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Parnell asks us to extend the holding of *Apprendi*, and our Supreme Court has declined to do so. See *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). We are of course bound by that determination. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. __ (2015).

Even if we were not so bound, we would not grant the requested relief. Parnell claims deprivation of a jury determination, but he waived a jury trial. As a consequence, he may not now claim a deprivation of his jury trial rights. See *Mack v. McCann*, 530 F.3d 523, 536 (7th Cir. 2008). Moreover, since Parnell had no objection to the accuracy of his criminal history, there was no need for a jury finding in the first instance. See *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) ("Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts* reflected in the jury verdict or *admitted by the defendant*."). We find no error in Parnell's sentencing.

Affirmed.

8