100,264

STATE OF KANSAS, *Appellee*, v. HARRY O. WHITE, *Appellant*.

(211 P.3d 805)

Opinion filed July 17, 2009.

*Carl Folsom, III*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Christina Trocheck*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Harry O. White was sentenced to life imprisonment under the provisions of K.S.A. 2006 Supp. 21-4643, commonly known as Jessica's Law, after he entered a plea of no contest to one count of aggravated indecent liberties with a child under the age of 14 in violation of K.S.A. 21-3504(a)(3). On appeal, White contends the district court erred in denying his motion to withdraw the plea. White's motion was based on a claim of ineffective assistance of counsel; he complained that his counsel failed to advise him of the maximum penalty he could receive, failed to explain that there was no "bargain benefit" from the plea agreement, and failed to negotiate a favorable plea agreement. The district court rejected the claim, finding that the written plea agreement and statements made during the plea hearing clearly advised White of

the possible penalty and consequences of the plea and that counsel had obtained a favorable plea agreement.

On our review of the record, we conclude that the factual findings regarding whether White was advised of the possible penalty are not supported by substantial competent evidence. We, therefore, reverse the decision to deny the motion and remand for a hearing on the motion.

*Factual and Procedural Background*

White, who was 69 at the time he was charged, was alleged to have sexually victimized three young girls repeatedly over a span of several years. Some of his alleged criminal acts were committed before the effective date of Jessica's Law, which increased the severity level for indecent liberties with a child under 14 to an off-grid crime and increased the penalty to a life sentence. Other counts related to acts alleged to have occurred after the effective date of Jessica's Law. As a result, White was originally charged with four counts of aggravated indecent liberties with a child under the age of 14 in violation of K.S.A. 21-3504(a)(3)(A) (Furse 1995), a level 3 person felony, occurring before the effective date of Jessica's Law; three counts of aggravated indecent liberties with a child under the age of 14 in violation of K.S.A. 2006 Supp. 21-3504(a)(3)(A), an off-grid felony, occurring after the effective date; and one count of aggravated indecent solicitation of a child in violation of K.S.A. 2006 Supp. 21-3511(a), a severity level 5 person felony.

Pursuant to the written plea agreement, White agreed to plead no contest to one count of aggravated indecent liberties with a child under the age of 14, an off-grid felony. In exchange, the State agreed to dismiss the remaining seven felony charges. The written plea agreement listed the various rights White was waiving and the consequences of the plea. With regard to the potential sentence, the agreement stated: "My lawyer has informed me that the plea of 'Guilty' or 'No Contest' could subject me to a maximum punishment, which as provided by law is not less than 25 years." In fact, under K.S.A. 2006 Supp. 21-4643, the maximum punishment was a life sentence.

At the plea hearing, White indicated he understood the nature of the plea agreement and that if he pled no contest he would be convicted by the district court based on the evidence that had been presented at his preliminary hearing. White also acknowledged that he would most likely not be permitted to withdraw the plea once it was entered by the court and expressed satisfaction with the legal representation he had received. The district court advised White of the rights he would be waiving by entering a no contest plea and informed White that he could "receive a sentence of up to life in custody of the Department of Corrections with a minimum 25 years eligibility for probation [sic]." There was no other discussion of the potential length of the prison sentence, and neither counsel nor the court noted the mistake in the written plea agreement's statement that the maximum sentence was "not less than 25 years." After determining the plea was knowing and voluntary, the district court accepted the plea.

However, before sentencing, White moved to withdraw his plea for good cause. This motion was filed by an attorney whom White retained after White's previously appointed counsel had been permitted to withdraw from the case. Shortly thereafter, White filed a motion for continuance and informed the district court that he had retained yet a different attorney to represent him. Through his new counsel, White filed a revised motion to withdraw his plea in which he argued that good cause was shown because (a) his plea was not knowing and voluntary in that prior defense counsel failed to fully inform him of the consequences of entering the plea, and (b) at White's age of 69, he did not receive any "bargain benefit" in the State's dismissal of the seven remaining charges because his controlling sentence would have been essentially the same (hard 25 life sentence) even if he had been convicted of all eight criminal charges, which would have resulted in White's incarceration for the remainder of his natural life.

In denying White's motion to withdraw, the district court observed that White had received the advice of several attorneys. The record on appeal reflects, by our count, that there were five different attorneys who entered an appearance on White's behalf. The district court indicated that White had apparently been unhappy

with some of the legal advice he had received. Regardless, according to the district court's findings, White had a full opportunity to consult with counsel regarding his no contest plea.

In addition, the district court found that White was not pressured into making a decision based on time constraints. White's counsel at the hearing on the motion to withdraw his plea confirmed that White admitted to having approximately 45 minutes to review and discuss the plea agreement with his attorney immediately preceding the plea hearing. In addition, the court pointed out that more than 10 months passed between the time criminal charges were brought against White and the entry of his no contest plea. Further, the court noted that White had an opportunity to hear the evidence submitted at the preliminary hearing. One victim, according to the district court, was "as articulate and succinct and direct" as any child victim he had "ever heard."

Speaking of paragraph 9 of the written plea agreement, which stated the maximum penalty White could receive was not less than 25 years, the district court observed: "I don't know what could be clearer than that." The district court continued: "[A]s part of any plea proceeding the Court engages in a detailed colloquy with the defendant . . . and I believe the record would bear out that I took extra care to make sure that Mr. White understood the serious consequences of what he was undertaking to propose to the Court." The court concluded:

"[T]his decision was made, . . . in the observation of the Court in accordance with the clear, concise and precise testimony given at the preliminary hearing and after a full and complete explanation by counsel, the signing of a detailed written plea agreement and a long colloquy with the Court to ascertain that Mr. White understood that written plea agreement and the consequences thereof . . . .

"The Court would find under the circumstances of this case that there is no good cause to allow the withdraw[al] of the plea. The motion to withdraw the plea would be overruled and denied. Plea was freely and voluntarily [made], . . . after advice from not one but at least three prior attorneys participating in the case. And upon a full and complete written Tender of Plea and full and complete colloquy on the record with the Court."

After denying the motion to withdraw White's plea, the district court sentenced White to life imprisonment without the possibility of parole for 25 years and postrelease supervision for life. White

now appeals. This court's jurisdiction is under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

## Withdrawal of Plea

White originally made two arguments on appeal. In one, made as an alternative to his principal argument that he had established "good cause" to withdraw his plea, White argued his life sentence violates the right against cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights or, similarly, the Eighth Amendment to the United States Constitution. At oral argument, White withdrew this issue from consideration in light of this court's decisions in *State v. Thomas*, 288 Kan. 157, Syl. ¶ 1, 199 P.3d 1265 (2009), and *State v. Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 1, 194 P.3d 1195 (2008).

Thus, the sole issue for our consideration is whether the district court erred in denying White's motion to withdraw his plea.

K.S.A. 22-3210(d) addresses the withdrawal of a no contest or guilty plea. It establishes two standards for the district court. At any time before sentencing, a court may permit a plea to be withdrawn "for good cause shown and within the discretion of the court." After a sentence has been adjudged, the court may permit a plea withdrawal only "[t]o correct manifest injustice." K.S.A. 22-3210(d). This case presents a situation in which the lesser, "good cause" standard applies.

In considering if this standard has been met, White urges this court to apply an unlimited standard of review, contending that this issue involves statutory interpretation. It is well established, however, that in reviewing a presentence denial of a motion to withdraw plea, an appellate court utilizes an abuse of discretion standard of review, as suggested by the language of K.S.A. 22-3210(d). But, as this court has explained, in order for the district court's decision to receive the full measure of that standard's deference, it must have been based upon a correct understanding of the law. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006); see *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008); *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006). The defend-

ant bears the burden of establishing the abuse of discretion. *Schow*, 287 Kan. at 541.

In determining whether the defendant has shown good cause to permit the withdrawal of a plea, the district court should consider whether: "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made." *Schow*, 278 Kan. at 546 (citing *Edgar*, 281 Kan. at 36); see *State v. Adams*, 284 Kan. 109, 114, 158 P.3d 977 (2007); *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003).

White focused his arguments before the district court on whether his counsel had been effective in properly advising him of the possible penalties if he entered a plea. The standard for setting aside a plea based on ineffective assistance of counsel was discussed in *State v. Shears*, 260 Kan. 823, 830-31, 925 P.2d 1136 (1996), in which the defendant argued his counsel gave him wrong or misleading advice regarding the possible sentence. The court noted that the defendant must overcome the presumption that counsel's assistance was reasonable and explained that a defendant must meet the two-prong test stated in *Chamberlain v. State*, 236 Kan. 650, 654, 694 P.2d 468 (1985), which adopted the standards for determining ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

The *Shears* court summarized the defendant's burden in proving ineffective assistance of counsel by stating:

" 'To set aside a guilty [or no contest] plea because ineffective assistance of counsel has rendered the plea involuntary, a defendant must show that counsel's performance fell below the standard of reasonableness and that there is a reasonable probability that but for counsel's errors the defendant would not have pleaded guilty and would have insisted on going to trial.' *State v. Wallace*, 258 Kan. 639, Syl. ¶ 2, 908 P.2d 1267 (1995)." *Shears*, 260 Kan. at 830; see *Sanchez-Cazares*, 276 Kan. at 457.

Further, in defining the minimum standard for reasonable representation by an attorney representing a defendant considering whether to enter a guilty or no contest plea, the *Shears* court stated, in part, that " '[d]efense counsel has an obligation to advise a de-

fendant as to the range of permissible penalties and to discuss the possible choices available to the defendant.' " *Shears,* 260 Kan. at 830 (quoting *State v. Solomon,* 257 Kan. 212, 223, 891 P.2d 407 [1995]).

In this case, although the district court did not specifically state that it was finding that counsel's representation had been reasonable, the court made the factual finding that White had been informed of the consequences of the plea. Because the district court made factual findings, another level of analysis is added to our standard of review: When a district court makes factual findings related to claims of ineffective assistance of counsel, an appellate court determines whether the factual findings of the district court are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law. The court's legal conclusions are reviewed de novo. *State v. Overstreet,* 288 Kan. 1, 24, 200 P.3d 427 (2009); see *Sanchez-Cazares,* 276 Kan. at 457.

In arguing that the district court's findings and conclusions were erroneous, White points to paragraph 9 of the written plea agreement, which incorrectly stated the maximum penalty White could receive was not less than 25 years rather than accurately stating that the maximum penalty he could receive was life in prison. The district court, in making its factual findings, did not recognize the misstatement and instead, in referring to paragraph 9 of the written plea agreement, observed, "I don't know what could be clearer than that." The district court used this factual finding as a basis for concluding that White was adequately informed of the maximum possible penalty.

Because this finding is based on a written plea agreement, we do not have to accept the district court's interpretation. An appellate court reviews a written plea agreement de novo and, therefore, is able to reach a conclusion independent of the district court's findings. *State v. Smith,* 244 Kan. 283, 284-85, 767 P.2d 1302 (1989); see *State v. Boley,* 279 Kan. 989, 992-93, 113 P.3d 248 (2005). Here, we disagree with the district court's finding that paragraph 9 clearly stated the maximum penalty and the court's con-

clusion that the written plea agreement accurately informed White of the maximum sentence.

Contrary to the district court's findings, the written tender of plea is evidence that defense counsel gave White incorrect information—in other words, that counsel's advice was unreasonable and ineffective. There was no contrary evidence provided; the State did not offer defense counsel's testimony to explain what was discussed orally. Consequently, White, at a minimum, rebutted the presumption of reasonable representation.

To establish ineffective assistance of counsel, however, White must establish that he was prejudiced by his counsel's conduct. See *Shears*, 260 Kan. at 830. If defense counsel's advice was countered and clarified by other sources so that White was fully informed of the consequence of his plea, he may not be able to meet this burden.

One method by which White could have been fully informed of the consequences of the plea would be through the plea colloquy conducted by the judge. To assure that a defendant who enters a plea receives due process, K.S.A. 22-3210(a)(2) requires a judge who accepts a felony guilty or no contest plea to inform the defendant of the "consequences" of the plea. *Edgar*, 281 Kan. at 37. This includes the maximum possible penalties for the crimes to which the defendant pleads. K.S.A. 22-3210(a)(2). If a court fails to meet this requirement, the error can be deemed harmless and the plea need not be set aside if, upon review of the entire record, the purpose of the statute is otherwise served—*i.e.*, if a defendant is advised of the plea's consequences in a written plea agreement, by defense counsel, or in some other way. *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006). Similarly, if the written plea agreement or defense counsel fails to advise the defendant of the consequences, a judge's compliance with the requirements of K.S.A. 22-3210(a)(2) can remedy those failures.

In this case, the district court determined that the plea colloquy was sufficient to fully inform White of the possible consequences. In denying the motion to withdraw the plea, the district court stated: "[A]s part of any plea proceeding the Court engages in a detailed colloquy with the defendant . . . and I believe the record

would bear out that I took extra care to make sure Mr. White understood the serious consequences of what he was undertaking to propose to the Court."

In making this statement, the district court did not have the benefit of the transcript of the plea hearing, which is in the record on appeal. That transcript reveals that rather than clarifying any previous misstatements, the district court misspoke and made confusing statements. Specifically, the record reveals that the district court informed White that he could "receive a sentence of up to life in custody of the Department of Corrections with a minimum 25 years eligibility for probation [sic]." Granted, the first part of this sentence, when read in isolation, indicates White could receive a life sentence. The difficulty is that the second part of the sentence, which is very confusing and misleading, could be interpreted to mean that White would not serve a life sentence but would be eligible for probation. Although there was a later statement by the court explaining that the court would have to find substantial and compelling reasons to grant a dispositional or durational departure, it was never stated that the departure would be from a presumed life sentence. Rather, the undoubtedly inadvertent use of the wrong term by the district court could have been understood by a reasonable person to have meant that White was presumptively eligible for probation. Moreover, the confusing nature of the statement belies the district judge's assessment that "the record would bear out that I took extra care to make sure Mr. White understood the serious consequences of what he was undertaking to propose to the Court." Like the district court's other factual finding, this finding is not supported by the record.

Thus, there is not substantial competent evidence to support the district court's factual findings that paragraph 9 clearly informed White of the possible penalties or that the colloquy clearly explained the consequences of the plea. Because substantial competent evidence does not support the district court's findings, we reverse the denial of the motion to withdraw the plea.

White argues that if we find the district court erred, we should reverse his conviction and vacate his sentence. However, our conclusion that the district court's findings are not supported by sub-

stantial competent evidence does not mean that we can conclude that White has established that his counsel was ineffective. The various prongs of the ineffective assistance of counsel test are inherently factual and, at this point, there are no factual findings relating to either prong of the ineffective assistance of counsel test.

As we have stated, the written plea agreement does rebut the presumption that defense counsel's representation was reasonable. Yet, we cannot know whether the State was prepared to offer contrary evidence had the district court recognized the error in paragraph 9. On the other hand, we also recognize that White presented no evidence of confusion or prejudice; instead he only made the argument. While we could conclude that this means White failed to meet his burden, again it is not clear from the record what would have happened if the district court would have recognized the confusing statements made during the plea hearing. In addition, it would not be appropriate to resolve these questions on appeal because appellate courts do not make factual findings. *State v. Valladarez*, 288 Kan. 671, 685, 206 P.3d 879 (2009).

It is necessary to have the factual questions related to ineffective assistance of counsel resolved because, as we have stated:

"Where a defendant has not had competent counsel, or where a defendant has been misled, coerced, mistreated, or unfairly taken advantage of, or where a defendant's plea has not been fairly and understandingly made, one would have to characterize the resultant plea as 'unintelligently made.' In that event, there is indeed recourse for the unintelligently made plea; the district court can and ordinarily should grant the motion to withdraw plea pursuant to K.S.A. 22-3210(d). *Cf. White v. State*, 203 Kan. 687, 690, 455 P.2d 562 (1969) ('If such plea is induced by promises or threats which deprive it of its voluntary character, it is void, and a conviction based thereon is open to collateral attack.')." *Schow*, 287 Kan. at 543.

These determinations are yet to be made. Consequently, we conclude the matter must be remanded for further proceedings on White's motion to withdraw his plea.

Reversed and remanded.